IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTOPHER CHURCHILL | : | CIVIL ACTION |
| *On behalf of himself and all others* | : | |
| *similarly situated* | : | |
| | : | |
| v. | : | No.  10-6911 |
| | : | |
| CIGNA CORPORATION, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **August 12, 2011**

Plaintiff Kristopher Churchill asks this Court to certify a class of individuals who received

insurance from, or whose benefit plans were managed by, Cigna Corporation or its subsidiaries

(Cigna),[1] and who were harmed by Cigna's policy of denying benefits for certain types of treatment

for Autism Spectrum Disorder (ASD).  Churchill proposes two distinct subclasses.  Subclass A

would consist of individuals whose claims for Applied Behavior Analysis (ABA) or Early Intensive

Behavioral Treatment (EIBT)[2] were denied by Cigna on the grounds that such treatments are

investigative or experimental.  Subclass B would consist of individuals who did not make a claim

to Cigna for ABA or EIBT to treat ASD "in light of" Cigna's policy not to cover these types of

treatments.  For the following reasons, this Court will certify a portion of Churchill's proposed

---

[1] In some instances Cigna insured plan participants directly; in other cases, including that of
Churchill, Cigna simply administered and/or processed (but did not fund) plan benefits.  In all cases,
Cigna's Medical Coverage Policy applied to the class members.  This Court will thus refer to both
types of potential class members as plan participants or members, and will refer to Cigna's role with
respect to these participants as an administrator.

[2] Because EIBT or early intensive behavioral intervention is encompassed by the term ABA, both
types of treatment shall be called ABA for the purpose of this opinion.

Subclass A, but will not certify proposed Subclass B.[3]

**FACTS**[4]

Churchill received health insurance for himself and his family under a certification of group health coverage issued by Cigna prior to 2010.[5]  Churchill's son suffers from ASD and received ABA at the Mariposa School to treat his disorder.  When Churchill made an insurance claim to Cigna to cover his son's ABA, Cigna denied the claim pursuant to its Medical Coverage Policy, which provides that ABA is "experimental, investigational or unproven" for the treatment of ASD, and as such is excluded from the Plan's coverage.  *See* Pl.'s Mot. for Class Certification Ex. 1 (Cigna Medical Coverage Policy).  The Cigna Medical Coverage Policy  applies to all standard benefit plans, although it may be superceded by the policies set forth in individual plans.  *Id.* at 2.

ABA, which was developed approximately 40 years ago, is "a discipline concerned with the application of behavioral science in real-world settings such as clinics or schools with the aim of addressing socially important issues such as behavior problems and learning."  Pl.'s Mot. for Class

---

[3]  Because this Court declines to certify the proposed Subclass B, all references herein to the "class" shall refer only to Subclass A as modified by this memorandum.

[4]  "In deciding whether to certify a class under Federal Rule of Civil Procedure 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).  Class certification "calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met."  *Id.*  Such findings must be supported by factual determinations made by a preponderance of the evidence.  *Id.*  Also, a court must "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits–including disputes touching on elements of the cause of action."  *Id.*  Finally, "the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it."  *Id.*

[5]  As an employee of General Electric (GE), Churchill participated in the GE Medical Plan, which was governed by the Employee Retirement Security Act (ERISA).  Until 2010, GE used Cigna to process claims submitted under its benefits plan.

Certification Ex. 3 at 1 (the Kennedy Krieger Institute's overview of ABA and summary of scientific support). While ABA therapy encompasses a broad range of techniques, certain features are common to all ABA-based treatment, including "the objective measurement of behavior, precise control of the environment, and use of procedures based on scientifically established principles of behavior." *Id.* Many researchers support the use of ABA to treat ASD, including the American Academy of Pediatrics, which has declared ABA "the most efficacious psychosocial treatment for autism." *Id.* at 2.

On January 14, 2011, Churchill filed his First Amended Complaint, alleging Cigna improperly denied insurance benefits to cover his son's ABA treatment in violation of § 502(a)(1)(B) of the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) and (a)(3). Churchill sought benefits due under the Plan pursuant to § 1132(a)(1)(B) and equitable relief pursuant to § 1132(a)(3). Five days later, Churchill filed a motion to certify this case as a class action, proposing the following two subclasses:

> Subclass A: All individuals who, on or after November 24, 2004, were enrolled in a plan administered by a CIGNA Defendant, or insured under health insurance coverage offered by a CIGNA Defendant in connection with a plan, and who made a claim or make a claim for Applied Behavior Analysis and/or Early Intensive Behavioral Treatment for Autism Spectrum Disorder which was denied on the grounds that such treatment is deemed by a CIGNA Defendant to be investigative or experimental.

> Subclass B: All individuals who, on or after November 24, 2004, were enrolled in a plan administered by a CIGNA Defendant, or insured under health insurance coverage offered by a CIGNA Defendant in connection with a plan, and who did not make a claim for Applied Behavior Analysis and/or Early Intensive Behavioral Treatment for Autism Spectrum Disorder in light of Defendants' policy that such treatment is deemed to be investigative or experimental.

> Excluded from the subclasses are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as officers, directors, agents, servants or employees of Defendants, and the immediate family member of any such person. Also excluded is any

judge who may preside over this case or any person [who] has already settled a claim for either of these therapies with a Defendant.

Pl.'s Proposed Class Certification Order 1-2.  On June 24, 2011, this Court held a hearing to determine whether class certification was appropriate.  At that time, plaintiffs' counsel conceded that Churchill's benefits plan was no longer administered by Cigna.

On July 14, 2011, Churchill sought to amend his Complaint to add two additional class representatives, Luis Rolando and Parthiv Rawal, who are fathers of children with ASD and were denied ABA benefits by Cigna.  Both Rolando and Rawal are current members of plans administered by Cigna.[6]

**DISCUSSION**

Class certification is appropriate when it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701(1979)).  A party seeking to certify a class action must first meet the four requirements of Fed. R. Civ. P. 23(a):  (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative party must be typical of those of the class; and (4) the representative party must fairly and adequately protect the interests of the class.  These requirements are generally referred to as numerosity, commonality, typicality, and adequacy.

---

[6] In conjunction with his motion for leave to amend, Churchill also sought to file a supplemental brief in support of class certification.  Because this Court will allow Defendants a 30-day period in which to conduct discovery regarding the new proposed class representatives, Churchill's motion for leave to file an additional brief is denied without prejudice.  Such brief may be re-filed after the close of the new discovery period.

4

A party who satisfies the Rule 23(a) prerequisites must then meet the requirements of one of the subsections of Rule 23(b).  Here, Plaintiffs seek certification under Rules 23(b)(2) and (3).  Rule 23(b)(2) allows certification when the opposing party "has acted or refused to act on grounds that apply generally to the class."  Rule 23(b)(3) allows certification when the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

First, this Court must address whether the Rule 23 elements are satisfied for proposed Subclass A.  The first Rule 23(a) requirement, numerosity, is fulfilled when the class is sufficiently large such that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  In determining whether joinder is impracticable, a court should consider (1) the size of the potential class; (2) the geographic location of proposed class members; and (3) "the relative ease or difficulty in identifying members of the class for joinder."  *Graveley v. City of Phila.*, No. 90-3620, 1997 WL 698171, at *4 (E.D. Pa. Nov. 7, 1997).

Cigna argues certification should be denied because Churchill has not provided any information about the size of the class.  Although Churchill has not provided a specific numerical estimate of the class size, the size and scope of Cigna's customer base, when coupled with the incidence of autism in the general population, suggests the class is sufficiently numerous.  Cigna is the fourth largest health insurer in the United States, with more than 11 million participants, and the

5

Center for Disease Control and Prevention (CDC) has estimated that 1 in 110 children in the United States have autism.  Pl.'s Mot. for Class Certification Exs. 11 (third-party website estimating Cigna's plans "cover more than 11 million people") and 12 (CDC statistics regarding the incidence of autism).  Assuming the incidence of autism in Cigna Plan participants is similar to the incidence of autism among in the general population, and assuming each Cigna member's health care plan is covered by ERISA, the proposed class could consist of as many as 100,000 individuals.  If even a small fraction of these Cigna members filed claims for ABA,[7] Subclass A would be far too large and geographically diverse to render joinder practicable.  The Court thus finds the subclass is sufficiently numerous.

To satisfy Rule 23(a)'s commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  As the Supreme Court explained in *Dukes*, a decision issued after this case was filed, the key consideration in assessing commonality is not whether the class raises common claims, but whether a class action can "generate common *answers* apt to drive the resolution of the litigation."  *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Although Cigna urges this Court to hold Churchill has failed to satisfy the commonality requirement in light of the *Dukes* decision, the Supreme Court's holding in *Dukes* is inapposite.  In

---

[7] Because this Court declines to certify the proposed Subclass B, it is proper to consider only those class members who filed claims for ABA and were denied for numerosity purposes.

*Dukes*, the Supreme Court reversed certification of a class of female employees who asserted Wal-Mart engaged in a discriminatory pattern of conduct, reasoning that Wal-Mart's decision to give local supervisors discretion over employment matters "is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Id.* at 2554. Here, in contrast, Cigna indisputably has a national policy of denying coverage for ABA to treat ASD. *See* Pl.'s Mot. for Class Certification Ex. 1 (Cigna Medical Coverage Policy). Pursuant to that policy, all Subclass A members were denied coverage for ABA. Although the Cigna Medical Policy may theoretically be overridden by individual plans, there is no evidence that any plans elected to alter Cigna's policies with respect to ABA coverage. Additionally, the central question here is whether Cigna's denial of medical coverage for ABA as a treatment for ASD on the basis that such treatment is investigative or experimental was proper, and the answer to this question will resolve each class member's individual claim. While class members may be entitled to different benefits, participate in different Cigna-administered plans, and have children who would benefit from ABA in varying degrees, these differences are not significant enough in this litigation to defeat commonality. Because the entire class was allegedly harmed by Cigna's uniform policy, and because resolution of the class members' claims hinges on whether such a policy is proper, the commonality element is satisfied.

The next Rule 23(a) consideration is typicality, which requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to "ensur[e] that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the

litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). When analyzing typicality, a court must compare the situation of the proposed representative to that of the class as a whole by considering "the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *Id.* at 597-98.  A court must also consider whether "the interests and incentives of the representative [are] sufficiently aligned with those of the class." *Id.* at 599.

Here, like the rest of Subclass A, Churchill submitted a claim for medical coverage for ABA as a treatment for ASD, which was denied pursuant to Cigna's policy.  Because the same conduct–Cigna's routine denial of reimbursement for ABA–affected all class members, including Churchill, he is a typical plaintiff insofar as he seeks to represent a class of individuals who are former participants of a plan administered by Cigna.  Counsel admitted at oral argument, however, that Churchill is not currently a member of such a plan.  As a result, Churchill is not a typical representative of those potential class members who are current participants in a Cigna-administered plan.  This distinction is important because, given that ASD is an ongoing condition, current plan participants have a strong interest in seeking prospective injunctive relief, while Churchill has no discernible interest in such relief.  He is therefore not a proper representative to pursue a claim for injunctive relief on behalf of current Plan participants.  "It is well settled that to  be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987).  Because Churchill  cannot

8

benefit from an injunction ordering Cigna to change its policy regarding ABA coverage, he has an incentive to seek only economic damages to cover the cost of the treatment his child has already received.[8]

In apparent recognition of the fact that he is not a typical representative of the entire proposed class, Churchill seeks leave to amend his Complaint to add Rolando and Rawal, who are both current participants in Cigna-administered plans, as named plaintiffs. This Court will grant leave to amend, but will delay its decision regarding certification of a subclass of current Cigna participants until Cigna has the opportunity to conduct discovery related to these new proposed class representatives. In the interim, this Court will narrow proposed Subclass A to include only former Cigna members, whom Churchill is qualified to represent. Typicality is thus satisfied for the portion of Subclass A consisting of individuals who were formerly insured by Cigna or whose plans were formerly administered by Cigna.[9]

As the final step under Rule 23(a), this Court must determine whether "the representative

---

[8] This issue also calls into question Churchill's standing to pursue prospective injunctive relief, because if Churchill is not a current plan member he cannot show "that he faces a realistic threat from the future application of [Cigna's] policies." *Worthy v. N.J. State Parole Bd.*, 183 F. App'x 262, 265 (3d Cir. 2006). Although Churchill asserts in his Complaint that he is "insured under a certificate of group health coverage issued by" Cigna's North Carolina affiliate, Compl. ¶ 2, it appears his affiliation with Cigna ended sometime prior to this Court's consideration of his motion for class certification, which impedes certification of the entirety of his proposed class. *See Allen v. Likins*, 517 F.2d 532, 535 (8th Cir. 1975) (holding that a claim which is mooted before class certification must be dismissed unless the district court failed to timely certify the class). Because this Court will permit amendment of the Complaint to add additional class representatives, it is not necessary to address whether Churchill's claim for injunctive relief should be dismissed for lack of standing.

[9] If, after an additional period of discovery, this Court finds Rolando and Rawal satisfy the requirements of Rule 23, the class certification order will be amended pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This adequacy requirement has two components:  (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class."  *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996).  As to the first element, a court must conduct "an inquiry into potential conflicts among various members of the class, . . . because the named plaintiffs' interests cannot align with those of absent class members if the interests of different class members are not themselves in alignment." *Id.* (citation omitted).  Although this inquiry tends to merge with the commonality and typicality elements, it requires a more thorough examination of any potential conflicts between the class representative and the class.  *Falcon*, 457 U.S. at 158 n.13.  The second element requires consideration of the competency and qualifications of class counsel to ensure counsel is capable of managing the class litigation.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 312 (3d Cir. 1998).

As addressed above, Churchill is an inadequate representative for current Cigna customers because his incentive is to seek only the highest amount of monetary relief possible, not injunctive relief from which he could not benefit.  This presents a clear conflict with the interest of current Cigna plan members.  There is no apparent conflict, however, between Churchill and the other former Cigna plan members, who are primarily interested in receiving reimbursement for their claims for ABA which were denied pursuant to Cigna's policy.  This Court thus finds Churchill an adequate representative of the modified class, which includes only former Cigna plan members.

As to the qualifications of class counsel, counsel has extensive experience with class actions

of this type.  For example, in a Michigan case involving an insurer's failure to cover ABA in which plaintiffs raised the same claims as Churchill, counsel secured a favorable settlement for the class. Counsel is also involved in another ABA-related case in Michigan which was recently certified as a class action.  *See Potter v. Blue Cross Blue Shield of Michigan*, No. 10-cv-14981 (E.D. Mich. July 14, 2011).  In the course of finding counsel's representation satisfied the adequacy requirement, the Michigan district court judge noted, "Counsel have also filed numerous similar actions across the country, in both state and federal court, seeking from insurers reimbursement of the cost of ABA treatment." *Id.* at *14.   Given counsel's experience in similar class actions, counsel is uniquely positioned to effectively represent this class.   Churchill and his counsel are thus adequate representatives for the modified class.

Having found the Rule 23(a) requirements are met for the modified class, this Court must next determine whether the proposed class satisfies one of the provisions of Rule 23(b).  Churchill seeks certification under two provisions, Rule 23(b)(2) and 23(b)(3).  Because certification under Rule 23(b)(2) is appropriate only where the relief sought is primarily injunctive or declaratory–relief which is unavailable to Churchill and the modified class of former Cigna plan participants–certification under this provision is inappropriate.  *See Barabin v. Aramark Corp.*, No. 02-8057, 2003 WL 355417, at *1 (3d Cir. Jan. 24, 2003) ("Class actions certified under Rule 23(b)(2) are limited to those cases where the primary relief sought is injunctive or declaratory relief.").  This Court will thus consider whether the requirements of Rule 23(b)(3) are met.

Rule 23(b)(3) allows certification where "a court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and

11

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally called "predominance" and "superiority." *In re Prudential*, 148 F.3d at 313. In determining whether a class may be certified under this provision, a court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). The predominance standard is "far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (internal quotation marks and citations omitted). This element requires an examination of "the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001).

Cigna alleges individual issues predominate over common class issues, because each proposed class member's claim depends on the terms of his or her plan, the type of ASD for which

an ABA treatment claim is being made, and the nature of the ABA treatment which was received.[10]

Distinctions in class members' Cigna plan terms do not preclude predominance.  While each member's plan may have different exclusions, it appears the "investigative or experimental" exclusion was the basis for Cigna's denial of ABA coverage.  The Cigna Medical Coverage Policy excludes coverage for ABA on this basis, and Cigna has not provided evidence to show other ERISA-covered plans altered this policy to either allow coverage for ABA or to deny coverage on a different basis.[11]  Similarly, while there may be differences in the types of ASD that affected each class member's child and the types of ABA treatment that child received, Cigna made a class-wide determination that ABA was experimental in all cases.   The propriety of this determination–specifically, whether it violates ERISA–can easily be litigated in a single forum.

Finally, a class action is the superior method for resolution of this matter because it is in the best interests of the class to consolidate their resources to challenge Cigna's denial of ABA coverage as a group.  While each individual could potentially have a substantial claim for damages, pursuing such a claim would require significant expenditures for attorneys' fees and costs which could well

---

[10] Cigna also raised these arguments in contesting certification under Rule 23(a), but due to the higher standard required by the predominance inquiry this Court addresses them within the predominance framework.

[11] Cigna correctly noted that the GE Plan excluded coverage for both "experimental and investigational services" as well as "services or programs that are primarily residential or educational."  Def.s' Opp'n to Class Certification 13.  At oral argument, however, Cigna admitted Churchill's claim was denied based on the experimental/investigative exclusion, not the educational exclusion.  This admission, when coupled with the Medical Coverage Policy's declaration that ABA coverage should be denied because ABA is investigative and experimental, provides sufficient evidence for this Court to find that Cigna denied coverage for ABA based on the experimental/investigative exclusion. Cigna has not provided any evidence to show ERISA-covered plans existed which did not contain an exclusion for experimental or investigative treatment.

13

exceed the amount of recovery.  Even if such fees and costs are ultimately recoverable, the necessity

for large upfront expenditures and the time required to litigate against a well-funded company could

deter meritorious lawsuits.  Additionally, there is no indication any potential class members have

pending claims against Cigna that will be hindered, rather than aided, by this litigation.  Because it

is Cigna's nationwide policy to deny all coverage for ABA treatment, a nationwide class action

contesting this uniform denial is the most cost-effective and efficient method for resolution of this

dispute.  Classwide resolution also prevents disparate outcomes which would cause uncertainty about

whether ABA treatment must be covered under the Cigna plan.  Accordingly, class certification

under Rule 23(b)(3) is appropriate.

Having determined this case may proceed as a class action, this Court must define the scope

of the class to be certified.  As explained above, due to Churchill's inability to seek injunctive relief,

Subclass A shall be certified with Churchill serving as a class representative for only those

individuals who are former members of a Cigna-administered plan, and whose claims for medical

coverage for ABA to treat ASD were denied based on Cigna's policy that such treatment is

investigative or experimental.

Regarding Plaintiffs' proposed Subclass B, Churchill argues individuals who were deterred

from seeking a benefit to which they are entitled due to a defendant's improper policy may be

included in a class action challenging that policy.  In support, he cites *International Brotherhood of

Teamsters v. United States*, 431 U.S. 324 (1977), in which the Supreme Court allowed relief for a

class of non-applicants who were discouraged from applying for jobs where the employer had a

policy of discrimination.  Churchill also cites cases from other districts where, in the ERISA context,

non-claimants who failed to act because such action would be futile were afforded relief.  *See De Pina v. Gen. Dynamics Corp.*, 674 F. Supp. 46, 51 (D. Mass. 1987) (allowing an individual non-claimant to recover for an ERISA claim); *Mers v. Marriott Int'l Grp. Accidental Death & Dismemberment Plan*, 949 F. Supp. 1323, 1327-28 (N.D. Ill. 1996) (same).

These cases are unpersuasive to show class certification is appropriate here.  An individual ERISA plaintiff who failed to submit a request for benefits (and therefore did not exhaust his or her administrative remedies) must prove that such action would be futile.  *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990).  The Third Circuit has denied use of the futility exception, however, when an ERISA plaintiff did not request the contested benefit, even when the plan has a blanket policy of denying all such requests.  *See id.* at 917 (upholding a "district court's conclusion that because [the plaintiff] did not request [the disputed benefit], he [wa]s precluded from seeking judicial relief on his claims seeking to enforce the terms of the Plan" despite the fact his claim would have been denied pursuant to company policy).  Courts are reluctant to excuse exhaustion when a plan member fails to make a claim because the futility exception requires an individualized analysis of each non-claimant's behavior before filing a lawsuit.  *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002) (enumerating five factors courts consider in deciding whether futility justifies a plaintiff's failure to exhaust, including "whether plaintiff diligently pursued administrative relief [and] acted reasonably in seeking immediate judicial review").  In the class action context, it is impossible to adduce "clear evidence of futility," *id.* at 250, since the class action device precludes consideration of individual circumstances.   This Court thus declines to certify

proposed Subclass B.[12]

Although a Michigan district court, in a case involving nearly identical facts, allowed certification of a similar subclass of non-claimants, the Michigan decision is unpersuasive. *See Potter*, No. 10-cv-14981, at *8 (E.D. Mich. July 14, 2011) (certifying a subclass of beneficiaries who "did not make a claim for [ABA] therapy for [ASD] in light of Defendant's policy that such treatment is deemed to be investigative or experimental"). There, the Court reasoned the "theoretical difficulty" of determining whether a person was a member of this subclass was overcome by the presumption that any insured who failed to submit a claim did so based on the insurance carrier's policy to deny ABA coverage, because no other reason could explain the failure to submit such a claim. *Id.* Such reasoning is unpersuasive, however, given the multitude of reasons why a beneficiary might fail to file a claim. For example, the beneficiary might believe that a different provision of the Cigna policy, such as the education exclusion, renders reimbursement for ABA unavailable. In such a case, Cigna's policy of deeming ABA "investigative and experimental" would not be the actual cause of any harm to the non-claimant. Moreover, the presumption relied upon by the Michigan court is unavailable given the binding Third Circuit precedent requiring an ERISA plaintiff to file a claim for benefits in order to seek judicial intervention. *Berger*, 911 F.2d at 916.[13]

---

[12] Because certification of Subclass B is denied on this ground, this Court need not consider Cigna's arguments regarding the propriety of Churchill serving as a class representative for a subclass of which he is not a member.

[13] Cigna also urges this Court to adopt persuasive authority in which a district court, faced with similar facts, declined class certification entirely. *See Graddy v. Blue Cross Blue Shield of Tenn.*, No. 4:09-cv-84, 2010 WL 670081 (E.D. Tenn. Feb. 19, 2010). Review of this case reveals that, unlike here, the defendant in *Graddy* did not have a nationwide medical coverage policy in which it stated all claims for ABA treatment would be denied because such treatment is investigative and experimental. The instant case is thus distinguishable because it presents additional facts favoring

For the forgoing reasons, class certification shall be granted only as to the modified class of former Cigna beneficiaries whose claims for reimbursement for ABA treatment given to children with ASD were denied by Cigna.

An appropriate order follows.

BY THE COURT:


\s\ Juan R. Sánchez
Juan R. Sánchez, J.

_____

class certification.